**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Steven H., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No.: 21-cv-50257 |
| v. | ) | |
| | ) | Mag. Judge Margaret J. Schneider |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

    It is the Court's Report and Recommendation that for the reasons set forth below, Plaintiff's motion for summary judgment, [16], be granted, the Commissioner's motion for summary judgment, [17], be denied, and the decision of the ALJ be reversed and remanded. Any objection to this Report and Recommendation must be filed by February 1, 2023.

## BACKGROUND

    A. Procedural History

    Plaintiff filed an application for disability insurance benefits on January 27, 2016. R. 692. He alleges that he suffered from fibromyalgia, disc disease/arthralgia, knee issues, anxiety/depression, diabetes, obesity, neuropathy, and varicose veins with leg swelling. R. 776. Plaintiff alleges disability beginning September 1, 2014. R. 92. Plaintiff's claims were initially denied on June 29, 2016, and upon reconsideration on September 19, 2016. R. 67–76, 77–88, 92. After Administrative Law Judge ("ALJ") Jessica Inouye held a hearing on February 28, 2018, the ALJ issued a decision on September 11, 2018 finding Plaintiff was not disabled. R. 92–101. Plaintiff then filed a request for review of the decision with the Appeals Council, which denied review on August 14, 2019. R. 601–06. Plaintiff then appealed to this court and on September 16, 2020, on joint agreement of the parties the Court ordered the decision be remanded to reassess Plaintiff's fibromyalgia. R. 617. The Appeals Council issued an order to remand on October 4, 2020. R. 621. The ALJ held a video hearing on March 16, 2021, at which she heard testimony from Plaintiff and Susan Entenberg, a vocational expert. R. 556. After this hearing, ALJ issued a decision again finding Plaintiff was not disabled. R. 497. Plaintiff now seeks review of this ALJ decision, which stands as the final decision of the Commissioner, *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007), under 42 U.S.C. § 405(g). Now before the Court are Plaintiff's motion for summary judgment, [16], and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment, [17].

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

B. Relevant Medical History[2]

Plaintiff has a medical history of chronic pain associated with fibromyalgia, arthritis, Raynaud disease, right tennis elbow, carpal tunnel syndrome, and multiple sclerosis (MS). R. 339–40. Plaintiff saw Moses G. Tomacruz, M.D., for his muscle pain, diabetes, and other medical conditions. On September 4, 2014, Dr. Tomacruz recorded that Plaintiff complained of "pain all over" and that the MRI of the right knee "showed mild ACL sprain and severe degenerative joint disease." R. 320–21. Dr. Tomacruz attributed Plaintiff's chronic pain as likely secondary to fibromyalgia and arthritis. R. 298. On December 15, 2015, Dr. Tomacruz noted that he had exhausted all possible medications to treat Plaintiff's pain to no avail and recommended Plaintiff use medical marijuana. *Id*.

On January 15, 2016, Michael Rivera, M.D. saw Plaintiff regarding his fibromyalgia pain. Dr. Rivera noted that Plaintiff complained of "joint pain, burning, electricity feeling in his legs and thighs" leg weakness, and difficulty sleeping. R. 291. Since Plaintiff's 2013 fibromyalgia diagnosis, Dr. Rivera noted that the "[s]everity increased to not allow [Plaintiff] to work." *Id*. Dr. Rivera also noted that an electromyography ("EMG") of Plaintiff "was negative for nerve damage." *Id*. Dr. Rivera found that Plaintiff's condition was "quite complicated", and that Plaintiff had been "unable to tolerate conventional fibromyalgia medicines." *Id*. Pain medicine had not been effective in treating patient's symptoms. *Id.* At the time of the visit, Plaintiff was only taking metformin, a drug prescribed to help manage his diabetes. *Id*. Dr. Rivera prescribed amitriptyline to assist Plaintiff with his fibromyalgia pain and difficulty sleeping. *Id*.

In 2016, Plaintiff completed two function reports. In his function report dated March 16, Plaintiff described constant pain in the joints throughout his body caused by fibromyalgia. R. 206. He indicated that he was able to operate a riding lawnmower for a half-hour period but could do no other housework due to the pain. R. 208–09. He stated that he could stand and walk for thirty-minute periods but could sit for only ten to fifteen minutes at a time. R. 211. He described his ability to pay attention as limited to five to ten minutes, his ability to handle stress as "fair", and his ability to handle changes in his routine as "difficult." R. 212. In his function report dated August 8, Plaintiff again described pain as limiting his daily activities. He noted anxiety and issues with memory, following instructions, and social interactions in addition to his mobility limitations and reduced grip strength in his hands. R. 256. He stated that he could not walk farther than a block without needing to rest. *Id*.

On September 20, 2016, Dr. Tomacruz referred Plaintiff to a rheumatology specialist for the muscle pain Dr. Tomacruz attributed to fibromyalgia. R. 445. In this referral, Dr. Tomacruz stated that Plaintiff was unable to work due to his chronic pain and desired to return to work once his pain was under control. *Id*. Dr. Tomacruz also noted that Plaintiff had stopped using medical marijuana despite finding his pain better controlled when using marijuana. *Id*.

On December 7, 2016, Plaintiff saw Frederick Dietz, M.D., a rheumatologist, for a rheumatology consultation. R. 449. Dr. Dietz found that Plaintiff suffered "Touch me not" tenderness in several areas of his body and significant jerking when at rest. R. 450. Dr. Dietz

---

[2] The Court summarizes Plaintiff's medical history that is relevant to this appeal. This section does not represent Plaintiff's entire medical history, or the ALJ's complete review.

assessed Plaintiff as suffering from "Nonarticular rheumatism"; "Dystonia of uncertain etiology"; "Significant anxiety and depression"; "Possible lumbar spinal stenosis"; "Chronic easy fatigue"; and "Osteoarthritis of the right knew." *Id*. Dr. Dietz discussed an MRI of Plaintiff's lumbar spine and x-ray examinations of Plaintiff's lumbar spine and right shoulder. *Id*. He additionally referred Plaintiff to a psychiatrist. R. 449–50. On February 1, 2017, Plaintiff returned to Dr. Dietz who noted that Plaintiff's condition had remained unchanged since the last visit. R. 451.Dr. Dietz discussed Plaintiff's fibromyalgia and arranging a psychiatric appointment and MRI. R. 453. On July 19, 2017, Plaintiff saw Dr. Dietz who again recorded that Plaintiff's condition remained unchanged. R. 454. In his progress notes, Dr. Dietz wrote "THIS GENTLEMAN HAS A PSYCHIATRIC DX-AND NEEDS TO SEE A PSYCHIATRIST NOT A BEHAVIORAL THERAPIST! I cannot help him." R. 455. In late 2017, Plaintiff met with mental health specialists who while primarily concerned with Plaintiff's depression and anxiety also noted his fibromyalgia complaints. At visits on October 10 and December 28, 2017, Martin Fields, M.D., noted that Plaintiff' suffers from "pain much of the time secondary to the fibromyalgia", post-traumatic stress and depression. R. 793, 797.

In 2018, Plaintiff began seeing Syed Zaidi, M.D., as his primary care physician after Dr. Tomacruz relocated his practice. Between June 2018 and January 2021, Dr. Zaidi examined Plaintiff at nine office visits and virtually at two telemedicine sessions. R. 799. On June 20, 2018, Dr. Zaidi first saw Plaintiff in an office visit primarily concerned with diabetes management. *Id*. Dr. Zaidi recorded in in his notes that Plaintiff was noncompliant with most of his medications and complained of "significant neuropathy" which Plaintiff identified as fibromyalgia, but Dr. Zaidi stated "I would unlikely believe fibromyalgia is evident given neuropathy from diabetes present. He claims that the other doctors have diagnosed him with fibromyalgia which again I believe is a disease that is over diagnosed." *Id*.

On July 18, 2018, Dr Zaidi saw Plaintiff and again recorded that Plaintiff had been noncompliant with his medications and that the session was primarily concerned with diabetes education. R. 804. Dr. Zaidi again noted Plaintiff "was starting and developed significant neuropathy in the classic glove and stocking distribution. He was eventually diagnosed in the past with fibromyalgia, but I believe is secondary to neuropathy." *Id*. Dr. Zaidi described Plaintiff as having full strength in all extremities, described discomfort in bilateral lower extremities, and reported compliance with his medications. R. at 804–06.

On September 10, 2018, Dr Zaidi noted that Plaintiff "has developed some neuropathy and classic glove and stocking distribution but also suffers from fibromyalgia." R. 810. On December 10, 2018, Dr. Zaidi stated that "neuropathy also interpreted as likely fibromyalgia has been flaring up. However, I believe neuropathy is more the culprit here." R. 815. In both September and December visits, Dr. Zaidi described Plaintiff as having full strength in all extremities and a normal mood. R. 817.

On March 12, 2019, Dr. Zaidi recorded that Plaintiff was using medical marijuana for his fibromyalgia coupled with neuropathy and was stable with insomnia, diarrhea, and fatigue and full strength in all extremities. R. 826–27. On June 12, 2019, Dr. Zaidi described Plaintiff as suffering from "widespread pain and neuropathy" attributable to fibromyalgia. R. 835. While the medical marijuana "[w]orks well", Plaintiff told Dr. Zaidi that he could no longer afford to use it. R. 834.

3

Dr. Zaidi described Plaintiff as having full strength in all extremities, but with digit swelling on both hands and decreased grip strength on his left hand. R. 837.

On July 20, 2020, Dr. Zaidi saw Plaintiff via online video to discuss his anxiety and diabetes management. R. 845. Dr. Zaidi recorded that Plaintiff was "[a]ble to sit and stand and walk and move all 4 extremities with normal appearing strength." R. 847. On December 14, Dr. Zaidi saw Plaintiff again via online video and noted that Plaintiff "reports pain in his body's getting unbearable [; b]oth feet have been feeling almost frost bit and a burning feeling." R. 854. Dr. Zaidi assessed that "[o]verall the pain the legs and feet [sic] worse with getting out of chair and going." *Id*. Regarding Plaintiff's complaint of "fogginess", Dr. Zaidi noted that "[p]ain can create some confusion." *Id*. Dr. Zaidi further observed that Plaintiff was "[a]ble to sit and stand and walk and move all 4 extremities with normal appearing strength" but has "decreased cap refill" in toes. R. 854, 856. Dr. Zaidi attributed Plaintiff's worsening pain to fibromyalgia and diabetic neuropathy and prescribed Plaintiff an increased dosage of Venlafaxine, a drug used to manage fibromyalgia pain. R. 859.

On January 19, 2021, Dr. Zaidi saw Plaintiff in connection with a bilateral leg ultrasound, diabetes, and long-term disability paperwork. R. 862. At this visit, Plaintiff discussed leg swelling, bruising, and discoloration. *Id*. Upon performing the ultrasound, Dr. Zaidi determined that blood flow in both feet "was almost normal." *Id*. Dr. Zaidi noted that in connection to his fibromyalgia, Plaintiff complained of "constant sharp pain" and that he experienced pain in areas across his body. *Id*. Dr. Zaidi noted that Plaintiff was "walking with significant stiffness", had "tenderness all over his body[,] particularly all the fibromyalgia tender point symmetric and the chronic pain scale", "and was unable to sit for a few minutes at a time in a chair and also unable to stand long periods of time." R. 863.

On January 19, 2021, Dr. Zaidi completed a fibromyalgia residual functional capacity questionnaire ("fibromyalgia RFC assessment") to provide his opinion regarding Plaintiff's fibromyalgia-related impairments and capacity for work given those impairments. R. 780–91. In the fibromyalgia RFC assessment, Dr. Zaidi stated that Plaintiff met the 1990 and 2010 criteria for fibromyalgia. R. 780. Dr. Zaidi opined that Plaintiff would need a job in which he could take unscheduled breaks during the workday to lie down and that for more than 25% of the workday Plaintiff's symptoms would be severe enough to interfere with his ability to perform work tasks. R. 782–83. Dr. Zaidi further opined that Plaintiff was incapable of "low stress" work and if working full time would miss more than four days a month due to his impairments and treatment. R. 783.

A week later on January 26. 2021, Dr. Zaidi examined Plaintiff and completed a mental health residual functional capacity questionnaire to provide his opinion regarding Plaintiff's mental health-related impairments and capacity for work given those impairments. R. 785. Dr. Zaidi opined that Plaintiff had extreme limitations in four areas of mental functioning and concluded that Plaintiff's ability to function in the workplace was extremely limited in several respects including his abilities to handle normal work stress and understand simple instructions. R. 787.

C. The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since March 31, 2019, the date last insured. R. 486. At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, degenerative joint disease of the right knee, fibromyalgia, diabetes with polyneuropathy, depression, and anxiety. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 487.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work except that he should avoid work hazards such as unprotected heights and dangerous machinery; could not climb ladders, ropes, or scaffolds; could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; and could only frequently perform fine and gross manipulation. R. 489. At step four, the ALJ found that Plaintiff could not perform any past relevant work. R. 494. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, vocational profile, and RFC, there were a significant number of jobs in the national economy that Plaintiff could have performed, including document preparer, polisher, and escort vehicle driver. R. 495–96. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act through March 31, 2019, the date last insured. R. 497.

**STANDARD OF REVIEW**

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). Nor can ALJs "succumb to the temptation to play doctor and make

5

their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted).

## DISCUSSION

Plaintiff raises three main arguments for remand: 1) the ALJ erred in evaluating the Plaintiff's subjective symptoms; 2) the ALJ erred in evaluating the opinion evidence; and 3) the ALJ erred in her Step Five analysis regarding representative jobs in the national economy. Since this Court finds that the ALJ erred in evaluating the opinion evidence, specifically Dr. Zaidi's fibromyalgia RFC assessment, the other issues will not be addressed.

Plaintiff argues that the ALJ failed to give appropriate weight to the RFC opinions of Dr. Zaidi, his treating physician. "For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). The ALJ must first determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "A treating doctor's opinion generally is entitled to controlling weight if it is consistent with the record, and it cannot be rejected without a 'sound explanation.'" *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018). An ALJ may decline to give controlling weight to a treating physician's opinions, if she "provide[s] 'good reasons' for affording it less weight. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2); *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018)).

If the ALJ decides not to give controlling weight to a treating physician's opinion, she must evaluate certain checklist factors to determine the appropriate amount of weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). These factors include but are not limited to the nature and extent of the treatment relationship (including its length, and the frequency of examinations, the opinion's supportability, the opinion's consistency with the medical record as a whole, and the treating physician's specialization. 20 C.F.R. § 404.1527(c). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (internal citation omitted). The ALJ may not fixate on select portions of a treating physician's notes while disregarding more significant evidence. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (finding that the ALJ "cherry-picked" the treating physician's treatment notes about mood and affect while disregarding his diagnoses.").

In her decision, the ALJ recognized the treating physician rule and the opinions expressed by Dr. Zaidi in his fibromyalgia RFC assessment, but determined she was "not obligated or willing to assign any weight" to Dr. Zaidi's opinion regarding the functional limitations caused by Plaintiff's fibromyalgia. R. 493. The Court finds that this determination by the ALJ was not

6

supported by substantial evidence.

The ALJ found that Dr. Zaidi's opinion regarding the "severity of the claimant's fibromyalgia exceeds any evidence of record documented prior to the date last insured or since, including [Dr. Zaidi's] own treatment notes." R. 492. Consistency with the medical record including the treating physician's own notes is a critical factor in determining whether a treating physician's opinion is entitled to controlling weight. *See, e.g.*, *Lacher v. Saul*, 830 Fed. App'x 476, 478 (7th Cir. 2020). If the ALJ supported such a determination with substantial evidence, this finding alone could constitute "good reason" to not give controlling weight and a decisive checklist factor supporting the ALJ's decision to not give any weight at all to Dr. Zaidi's opinion. However, the ALJ's finding that Dr. Zaidi's opinion is inconsistent with the treatment record is not supported by substantial evidence.

First, the ALJ described the Order of Appeals Council, dated October 4, 2020, as inconsistent with the severity opined by Dr. Zaidi. R. 492. In support of this assertion, the ALJ provided a lengthy quotation from the Order noting that Plaintiff had a history of widespread pain, the "record contains indications of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions" and that other disorders that could cause these were excluded. *Id*. (quoting R. 623–24). The Appeals Counsel laid out these findings as support for its determination that the ALJ failed to properly consider the evidence of Plaintiff's fibromyalgia in her earlier decision. R. 624. From the quotation provided by the ALJ in her decision, it is not evident why these findings which support Plaintiff's fibromyalgia diagnosis are inconsistent with Plaintiff's subjective complaints of pain.

Next, the ALJ asserted that while the January 2016 fibromyalgia assessment supported Dr. Zaidi's opinion, the negative EMG showing no nerve damage suggested "limited severity." R. 492. While the January 2016 fibromyalgia assessment does state that Plaintiff's "EMG was negative for nerve damage," R. 291, the ALJ provided no reasoning to support her conclusion that this negative result discredits Dr. Zaidi's opinion. As Plaintiff argues in his brief, EMG is not mentioned as a tool in the Social Security Ruling on the evaluation of fibromyalgia. [16 at p. 14 (citing SSR 12-2p, 2012 WL 3104869 (July 25, 2012)]. Dr. Rivera noted the negative EMG in an assessment which concurred with Plaintiff's fibromyalgia and without providing any suggestion that a negative EMG result indicated less severe symptoms. R. 291. Without any explanation or reference to medical expert opinions or administrative guidance, there is nothing in the record to suggest that a negative EMG result is inconsistent with Dr. Zaidi's opinion regarding the severity of Plaintiff's fibromyalgia symptoms. *See Holloway v. Astrue*, No. CIV. 12-178-CJP, 2012 WL 4815664, at *7 (S.D. Ill. Oct. 10, 2012) ("The ALJ highlighted the absence of positive results on x-ray, EMG and MRI testing, but such negative test results are not relevant to the diagnosis or severity of fibromyalgia."); *see also Johnson v. Berryhill*, No. 116CV00429TWPMJD, 2017 WL 815111, at *6 (S.D. Ind. Mar. 1, 2017) ("[N]owhere in his report did Dr. Gasiewicz indicate that the MRI and EMG tests were discussed as relevant, or exclusively relevant, to a diagnosis of fibromyalgia.").

In describing the "wide discrepancy between the objective or documented evidence and [Dr. Zaidi's] opinion," the ALJ provides only one specific example from Dr. Zaidi's treatment

7

records. R. 493. The ALJ identifies that in his treatment notes dated June 20, 2018, Dr. Zaidi wrote "I would unlikely believe [sic] fibromyalgia is evident given neuropathy from diabetes present. He claims that the other doctors have diagnosed him with fibromyalgia which again I believe is a disease that is over diagnosed." *Id*. The ALJ found that "[c]omparing this evaluation to an assessment prepared specifically for this appeal suggests the opinion is based on the claimant's subjective statements, not a medical opinion." *Id*.

Discrediting Dr. Zaidi's opinion after two years of treating Plaintiff for its inconsistency with an early impression of Plaintiff's condition goes against the very rationale underlying the treating physician rule: "[m]ore weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances.'" *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Dr. Zaidi's opinion of Plaintiff's fibromyalgia diagnosis changed over the course of his treating relationship as he grew more familiar with Plaintiff. To discredit a treating physician's opinion, because it changed as he gained the very familiarity for which his opinion was valued is illogical. Dr. Zaidi's note on June 20, and other notes from early in his treatment relationship with Plaintiff, do not suggest malingering or otherwise cast doubt on Plaintiff's alleged pain symptoms, but only whether Plaintiff's symptoms should be attributed to fibromyalgia.

A treating physician's early doubts of claimant's diagnoses do not constitute good reasons to discredit later opinions supported by the treatment record. In *Michael N. v. Saul*, No. 18 CV 5424, 2021 WL 1172743 (N.D. Ill. Mar. 29, 2021), the court found that the ALJ mischaracterized a treating physician's note from relatively early in the treating relationship stating that the treating physician was "dubious" of the claimant's fibromyalgia "since his [history of] pain predates my understanding his pain symptoms only started after neck injury" as doubting the claimant's pain complaints, when the treating physician only doubted the source of Plaintiff's pain. *Michael N.*, 2021 WL 1172743, at *7. While the treating physician did describe the plaintiff's pain complaints as "new to me", the court found that the ALJ failed to acknowledge that the treating physician made this observation shortly after beginning his treatment of the claimant and that the treating physician evaluated the claimant as suffering from chronic pain in the succeeding years of treatment. *Id.* Here, as in *Michael N.*, the treating physician's observation relied upon by the ALJ was an assessment from the beginning of the treating relationship casting doubt on fibromyalgia as the source of Plaintiff's pain not the veracity of Plaintiff's complaints. *See id.* And here as in *Michael N.*, this assessment changed: as the treating physician grew more familiar with the Plaintiff's condition he adopted the fibromyalgia diagnosis. *See id.*

Due to these alleged inconsistences, the ALJ found Dr. Zaidi's opinion to be "very clearly based on the claimant's subjective complaints rather than being an actual treating medical source opinion of the functional abilities of the claimant considering the effects of treatment." R. 492–93. In making this statement, the ALJ failed to recognize that subjective complaints can be the basis of a treating physician's opinion on the severity of fibromyalgia symptoms. The Seventh Circuit has repeatedly recognized "that often there is no objective medical evidence indicating the presence or severity of fibromyalgia." *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020) "The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) (finding that the ALJ erred in discrediting the claimant's testimony regarding the extent of his fibromyalgia pain complaints,

8

which were corroborated by trigger-point testing and the prescription for "an opioid not intended for mild or acute pain.") Thus, "[i]n the absence of objective medical evidence, the severity of fibromyalgia symptoms may be evaluated based on the claimant's subjective statements regarding the impairment." *Apke*, 817 F. App'x, at 257.

Since treating physicians must evaluate the severity of fibromyalgia based on subjective complaints, the general principle that "[a] treating doctor's opinion may be properly discounted, . . . if it is based upon the claimant's subjective complaints rather than objective medical evidence," *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016), cannot be applied to cases of fibromyalgia in the same manner it can be applied to other conditions. *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (holding that since "fibromyalgia . . . cannot be measured with objective tests aside from a trigger-point assessment" the ALJ erred in discounting a treating physician's opinion for resting mainly on the claimant's subjective reports of pain). As the ALJ recognized in her decision, trigger-point assessments provided objective medical evidence that Plaintiff suffers from fibromyalgia. R. 492. Since no further objective medical testing can be performed to determine the severity of the fibromyalgia pain, Dr. Zaidi's opinion cannot be discounted merely because he relied on his observations of the Plaintiff and Plaintiff's subjective complaints made over the course of his treatment of Plaintiff, the only evidence at his disposal. *See Gerstner*, 879 F.3d at 264.

The ALJ noted that Dr. Zaidi's RFC opinions "were completed almost 2 years after the date last insured and was presenting the claimant in differently physically [sic] than at the date last insured." R. 492. While true that Dr. Zaidi's opinion was provided almost two years after the date last insured, March 31, 2019, the ALJ's finding that the Plaintiff is physically different than at the date last insured is a conclusory statement provided without any explanation other than those already addressed above. Plaintiff's treatment records show that he was diagnosed with fibromyalgia and treated for fibromyalgia-related pain since 2013. *See* R. 291. Dr. Tomacruz discussed Plaintiff's inability to work due to his fibromyalgia pain in his 2016 rheumatology referral. R. 445. Ultimately the question of whether Dr. Zaidi's fibromyalgia RFC opinion presents the Plaintiff's condition as different than on the date last insured comes down to whether it was consistent with the treatment records dated in 2019. As stated above, the ALJ's only specific example of an inconsistency between Dr. Zaidi's earlier treatment records and the 2021 fibromyalgia opinion is her reference to Dr. Zaidi's June 20, 2018 notes which question the cause of Plaintiff's pain, but not his complaints of pain. *See* R. 493.

Finally, the ALJ noted that "[a]lthough an internist, Dr. Zaidi is not a rheumatologist or other specialist." R. 492. While an appropriate factor for an ALJ to consider at the second step in determining what weight to assign to a treating physician's opinion, it is not the only factor to consider. *See* 20 CFR 404.1527(c)(5); *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) (finding that a claimant's "doctors' lack of specialization in rheumatology is not an acceptable basis for discounting their assessments" regarding the claimant's fibromyalgia). "Although . . . a specialist's opinion generally merits more weight than that of non-specialist, all licensed medical or osteopathic doctors are acceptable medical sources." *Id*. at 959 (citations omitted). Here as in *Thomas*, the ALJ has provided no contrary opinion from a specialist to discredit the opinion of Plaintiff's treating physician. *See id*. Other checklist factors support giving weight to Dr. Zaidi's opinion. Dr. Zaidi's treating relationship with Plaintiff as his primary care physician began in June

9

2018, two and a half years before Dr. Zaidi prepared his fibromyalgia RFC assessment and consisted of regular visits at which Dr. Zaidi examined Plaintiff, provided advice, and prescribed medications to address his medical conditions.

"The use of a medical expert can help ALJs resist the temptation to 'play doctor,' a label that usually produces a remand on judicial review, by evaluating medical evidence on his or her own." *Gebauer*, 801 F. App'x at 408. The ALJ discredited Dr. Zaidi's opinion based on her own analysis not that of a medical expert. "A medical expert may be especially helpful when evaluating the severity of a condition—like fibromyalgia—marked by subjective and fluctuating symptoms." *Id*. at 409. The ALJ references no medical opinion as contradicting Dr. Zaidi's fibromyalgia RFC assessment. The only medical opinions which the ALJ deemed meritorious were those of non-examining state agency consultants who the ALJ "assigned little weight." R. 492.

Ultimately, the ALJ failed to provide a "good reason" to not give controlling weight to Dr. Zaidi's fibromyalgia RFC opinion. Nor did the ALJ properly weigh the appropriate factors and provide substantial evidence to support her determination not to give any weight to Dr. Zaidi's fibromyalgia RFC opinion. As the ALJ's error in weighing the fibromyalgia RFC opinion is alone sufficient cause for remand, the Court need not consider the ALJ's analysis of Dr. Zaidi's mental health RFC assessment. Further, because the Court is remanding the ALJ's decision for her error in evaluating the treating physician's opinion, the Court need not address Plaintiff's additional arguments. On remand, the ALJ is encouraged to consider the other issues raised in this appeal.

## CONCLUSION

For the reasons stated above, it is this Court's Report and Recommendation that Plaintiff's motion for summary judgment [16], be granted, the Commissioner's motion for summary judgment [17], be denied, and the decision of the ALJ be reversed and remanded. Any objection to this Report and Recommendation must be filed by February 1, 2023. *See Provident Bank v. Manor Steel Corp*., 882 F.2d 258, 260 (7th Cir. 1989).

Date: January 18, 2022                    ENTER:

United States Magistrate Judge